**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x
OPERA SOLUTIONS, LLC,                                      :
                                Plaintiff,                 :
                                                           :        CASE No.: 7:16-CV-02239 (JPO)
                                                           :
                -against-                                  :
                                                           :
STEVE GOLD,                                                :
                                                           :
                Defendant.                                 :
-----------------------------------------------------------------------x
STEVE GOLD,                                                :
                                                           :
                                Third-Party Plaintiff,     :
                                                           :
                -against-                                  :
                                                           :
ARNAB GUPTA,                                               :
                                                           :
                                Third-Party Defendant.     :
-----------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF AND COUNTERCLAIM**
**DEFENDANT OPERA SOLUTIONS, LLC'S AND THIRD-PARTY DEFENDANT**
**ARNAB GUPTA'S MOTION TO DISMISS COUNTS II AND III OF**
**DEFENDANT,  COUNTERCLAIM PLAINTIFF, AND THIRD-PARTY PLAINTIFF**
**<u>STEVE GOLD'S COUNTERCLAIMS</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................................... ii

I.     BACKGROUND ...........................................................................................1

II.    STANDARD OF REVIEW ...........................................................................3

III.   ARGUMENT .................................................................................................4

       A.     Trying Gold's Counterclaims In Federal Court Violates the Arbitration
              Clause ..................................................................................................4

              1.     Gold's Claim Was Arbitrable ...................................................5

       B.     Res Judicata Bars Counts II and III of Gold's Counterclaims ...............8

              1.     Standard of Law ......................................................................8
              2.     The Elements of Res Judicata are Satisfied ............................8
              3.     Gold's Claims Could Have Been Easily Tried in Arbitration ....9

IV.    CONCLUSION ............................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*,
  307 F.3d 24 (2d Cir. 2002)..............................................................................4

*Allen v. McCurry*,
  449 U.S. 90 (1980)..........................................................................................8

*Arciniaga v. GM Corp.*,
  460 F.3d 231 (2d Cir. 2006)...........................................................................4

*Berman v. Sugo LLC*,
  580 F. Supp. 2d 191 (S.D.N.Y. 2008).............................................................3

*Erving v. Virginia Squires Basketball Club*,
  349 F. Supp. 716 (E.D.N.Y. 1972) .........................................................5, 6, 7

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd*,
  815 F.2d 840 (2d Cir. 1987)...........................................................................5

*Harsco Corp. v. Segui*,
  91 F.3d 337 (2d Cir. 1996).............................................................................3

*JLM Indus., Inc. v. Stolt–Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004)...........................................................................4

*Oldroyd v. Elmira Savings Bank*,
  134 F.3d 72 (2d Cir. 1998).............................................................................4

*Pike v. Freeman*,
  266 F.3d 78 (2d Cir. 2001)..........................................................................8, 9

*Rompalli v. Portnova*,
  No. 09 CIV. 3083 RMB/FM, 2010 WL 2034396, at *4 (S.D.N.Y. May 5, 2010),
  *report and recommendation adopted*, No. 09 CIV. 3083 RMB/FM, 2010 WL
  2034362 (S.D.N.Y. May 21, 2010)..................................................................4

**STATUTES**

9 U.S.C. § 2.....................................................................................................4

Age Discrimination in Employment Act of 1967 .........................................2

Americans with Disabilities Act of 1991 ......................................................2

ii

Title VII of the Civil Rights Act of 1964...........................................................................2

**RULES**

Fed. R. Civ. P. 12(b)(6)...................................................................................................3

**REGULATIONS**

Arbitration Decision, p. 3, 1:16-cv-08121, ECF No. 1-2, p. 3 .......................................2

ME1 23573072v.2

Plaintiff and Counterclaim-Defendant, Opera Solutions, LLC ("Opera Solutions"), and Third-Party Defendant, Arnab Gupta, by and through their undersigned counsel, hereby submit this Memorandum of Law in Support of their Motion to Dismiss Counts II and III of Defendant, Counterclaim-Plaintiff, and Third Party Plaintiff Steve Gold's ("Gold") Counterclaims.  Pursuant to the terms of his 2012 Employment Agreement, Gold should have submitted Counts II and III of his Counterclaim to arbitration.  Gold's failure to submit his claims to arbitration leaves them subject to dismissal.

## I.      BACKGROUND

On or about October 8, 2012, Opera Solutions entered into a written Employment Agreement with Gold setting forth the terms and conditions of his employment as the Executive Vice-President of Enterprise Solutions.  (*See* Sub. Compl. ¶¶ 2, 6) (Dkt. No. 9).)  As part of the hiring process, Gold and Opera Solutions negotiated an Employee Non-Disclosure, Proprietary Rights and Non-Competition Agreement (the "NDA") and an Employment Agreement.  (*Id.* ¶ 7.)

The broad arbitration clause in the Employment Agreement states:

> 16. <u>Arbitration</u>. Except as set forth in Section 7 and Section 18, the Employee and the Company **agree that any claim, controversy or dispute between the Employee and the Company (including, without limitation, its affiliates, officers, representatives or agents) arising out of or relating to this Agreement, the employment of the Employee, the cessation of employment of the Employee or any matter relating to the foregoing shall be submitted to and settled by commercial arbitration** in a forum of the American Arbitration Association ("<u>AAA</u>") located in the State of New York and conducted in accordance with the National Rules for the Resolution of Employment Disputes. In such arbitration: (a) the arbitrator shall agree to treat all evidence and other information presented by the parties to the same extent as Confidential Information under the NDA must be held confidential by the Employee, (b) the arbitrator shall have no authority to amend or modify any of the terms of the Agreement, and (c) the arbitrator shall have ten business days from the closing statements or submission of post-hearing briefs by the parties to render his or her decision. Any arbitration award shall be final and binding upon

the parties, and any court, state or federal, having jurisdiction may enter a judgment on the award. Each party shall bear its/his own costs of participating in any arbitration proceedings or other dispute proceedings. **The foregoing requirement to arbitrate claims, controversies, and dispute applies to all claims or demands by the Employee**, including, without limitation any rights or claims the Employee may have under the Age Discrimination in Employment Act of 1967 (which prohibits age discrimination), Title VII of the Civil Rights Act of 1964 (which prohibits discrimination in employment based on race, color, national origin, religion, sex, or pregnancy), the Americans with Disabilities Act of 1991 (which prohibits discrimination against qualified persons with a disability), the Equal Pay Act (which prohibits paying men and women unequal pay for equal work), ERISA, **or any other federal, state, or local laws or regulations pertaining to the Employee's employment or the termination of the Employee's employment**.

(*See* Employment Agreement ¶ 16 (emphasis added), 1:16-cv-08121, ECF No. 1-1: )  Section 7 of the Employment Agreement addresses Opera Solutions' remedies for a potential breach of the NDA by Gold, but does not abridge or alter the arbitration clause as to claims by Gold.[1]

Following his termination, Gold filed his Statement of Claims in the AAA arbitration against Opera Solutions and Gupta on July 15, 2015.  Gold's arbitration claims fall into two categories arising from his employment: (1) claims for entitlement to additional compensation; and (2) the circumstances surrounding Gold's termination.  Gold made the calculated decision to not assert any claims of fraudulent or negligent misrepresentation in his Statement of Claims for his arbitration so that he could collect on two alternative theories.

On October 13, 2016, the arbitrator, Hon. George C. Pratt, issued a Decision and Final Award in the Gold Arbitration (the "Arbitration Decision.").  In the Arbitration Decision, Judge Pratt discussed the representations made to Gold during his recruitment (Arbitration Decision, p. 3, 1:16-cv-08121, ECF No. 1-2, p. 3) ("Although he was not provided with Opera Solutions'

---

[1] The Arbitrator held that Opera Solutions' claims under the NDA were not arbitrable and had to be pursued in Court.  The NDA Agreement does not provide for any remedies for Gold.

direct financial data, Gold soon noticed that the company's financial condition was dramatically worse than had been represented to him during his recruitment the previous year.")  Gold submitted a petition to enforce Judge Pratt's award on October 18, 2016. (Gold's Application to Enforce Award, 1:16-cv-08121, ECF No. 1.)

Gold's tort claims for fraudulent misrepresentation in connection with the NDA and negligent misrepresentation in connection with the NDA, concern representations allegedly made to him during his recruitment and hiring process for employment with Opera Solutions.  Both processes relate to Gold's employment and fall within the contemplation of the Employment Agreement.  Additionally, they rely on the same set of alleged facts at issue in the Gold Arbitration.  As set forth below, Gold could have presented the claims in his Counterclaims in the arbitration but did not and should be precluded from asserting them here.

## II.    STANDARD OF REVIEW

Dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is proper when, as here, it appears beyond doubt that there are no set of facts in support of plaintiff's claim which would entitle plaintiff to relief. *Harsco Corp. v. Segui*, 91 F.3d 337, 341 (2d Cir. 1996).  Much like Gold's allegation that Opera Solutions or Gupta somehow harmed him by virtue of their alleged misrepresentations, the district court is "not bound to accept as true a legal conclusion couched as a factual allegation" and a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 199 (S.D.N.Y. 2008) (citations omitted).

## III.    ARGUMENT

### A.    Trying Gold's Counterclaims In Federal Court Violates the Arbitration Clause

The FAA states that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.  The Second Circuit has held that "the FAA represents a strong federal policy favoring arbitration as an alternative means of dispute resolution." *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (citations, modifications, and internal quotation marks omitted); *see also Arciniaga v. GM Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) (policy favoring arbitration is one that the Second Circuit has "often and emphatically applied"). Where an agreement contains an arbitration clause, there is "a presumption of arbitrability." *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 34 (2d Cir. 2002). When determining whether an arbitration clause applies to a particular dispute, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 29. Accordingly, "the burden lies with the party attempting to avoid arbitration to show that the arbitration provision does not apply." *Arciniaga*, 460 F.3d at 235.

Gold's Employment Agreement contains the broad arbitration clause excerpted above.  A broad arbitration clause "creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute."  *Oldroyd v. Elmira Savings Bank*, 134 F.3d 72, 76 (2d Cir. 1998) (citations, modifications, and internal quotation marks omitted).  Even if the allegations in the Counterclaims focus on his recruitment process, Gold's recruitment and the conditions of his employment agreed to in that process fall within the broad scope of the arbitration clause because they are a matter pertaining to his employment.  *See Rompalli v. Portnova*, No. 09 CIV.

4

3083 RMB/FM, 2010 WL 2034396, at *4 (S.D.N.Y. May 5, 2010), *report and recommendation adopted*, No. 09 CIV. 3083 RMB/FM, 2010 WL 2034362 (S.D.N.Y. May 21, 2010) (finding claim regarding allegedly fraudulently induced arbitration clause arbitrable).

### 1.     Gold's Claim Was Arbitrable

As set forth in Opera Solutions' Reply in Support of it Motion to Stay Arbitration (ECF No. 24), Gold's claims were arbitrable and should have been asserted there.  When determining the arbitrability of a claim, courts in the Second Circuit look to the underlying allegations in the complaint, not just the legal causes of action.  *Genesco, Inc. v. T. Kakiuchi & Co., Ltd*, 815 F.2d 840 (2d Cir. 1987).  Specifically:

> In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted.  …  If the allegations underlying the claims "touch matters" covered by the parties' [arbitration clause], then those claims must be arbitrated, whatever the legal labels attached to them.

*Id.* at 846 (internal citations omitted).  As stated above, the test of arbitrability is applied in the context of the strong federal policy favoring arbitration which requires that arbitration clauses be construed as broadly as possible. :*Id.* at 847.

In *Erving v. Virginia Squires Basketball Club*, 349 F. Supp. 716 (E.D.N.Y. 1972), the court held that a basketball player's claim of fraudulent inducement, similar to Gold's, fell within the broad arbitration clause in the player's contract.  *Id.* at 718.

In relevant part, the arbitration clause in Section 16 of the Employment Agreement reads:

> **Except as set forth in Section 7 and Section 18**, the Employee and the Company agree that **any** claim, controversy or dispute between the Employee and the Company (including, without limitation, its affiliates, officers, representative or agents) arising out of or relating to this Agreement, **the employment of the Employee,** the cessation of employment of the Employee, or any matter relating

to the foregoing ***shall be submitted to and settled by commercial arbitration*** … .

(*Id.* (emphasis added).)

Neither Section 7 or Section 18 of the Employment Agreement (the exceptions to the arbitration clause) apply to Gold's Claims.  Section 7 specifies that "the *remedies* provided for in the NDA are separate and distinct from those provided for in this Agreement and in no event shall such remedies be superseded by any provision contained herein."  (*Id.* at § 7.)  Section 18 states that:

> Notwithstanding the arbitration provisions of Section 16, upon any termination for Cause that may cause irreparable harm to the Company or upon the violation of the Company's NDA, the Company shall be entitled, if it so elects, to institute and prosecute proceedings to obtain injunctive relief and damages, costs and expenses, including, without limitation, reasonable attorneys' fees and expenses, with respect to such termination.

(*Id.* at § 18.)

Gold argued in opposition to Opera Solutions' motion to stay that his misrepresentation claims are governed by the NDA and are outside the scope of the arbitration clause.  (ECF No. 21.)  This is disingenuous to say the least.  All of the alleged misrepresentations of the financial health of Opera Solutions and its client base were admitted by Gold at the arbitration to be considered by him in connection with his anticipated compensation (bonus, value of share grants), and have nothing to do with his obligations to maintain Opera Solutions' confidential information and not solicit, or attempt to solicit, its employees or clients.  (*See*, *e.g.*, ECF No. 11 ¶¶ 5, 18, 19, and 75.)  For example, Gold alleges "Defendants and their representatives also made materially false statements of fact about the financial status of Defendant Opera Solutions to Mr. Gold during the recruitment process, in a fraudulent effort to induce Mr. Gold to enter into

6

the 'Employee Non-Disclosure, Proprietary Rights and Non-Competition Agreement' … upon which they now seek relief." (*Id.* ¶ 5.)  Gold further alleges that:

> While recruiting Mr. Gold for employment, Defendants and their representatives made several representations to Mr. Gold that were materially false, including, but not limited to, statements made in 2012 asserting that:
>
> (a) Defendant Opera Solutions' 2012 revenue was projected by approximately $105 million;
>
> (b) Defendant Opera Solutions' expected 2013 revenue was projected to be approximately $163 million;
>
> (c) Defendant Opera Solutions' pipeline of accounts was valued at approximately no less than $1 billion …

(*Id.* ¶ 75.)  While these allegations are framed in the context of the NDA, they directly relate to Gold's compensation under the Employment Agreement, particularly his performance bonus and equity grants.  (*See* Employment Agreement ¶ 6, 1:16-cv-08121, ECF No. 1-1: )  Here, like in *Erving*, Gold's misrepresentation claims fall within the parties' arbitration clause.

Contrary to Gold's position in opposition to Opera Solutions' motion to stay (ECF No. 21), the fact that Opera Solutions voluntarily withdrew its breach of the NDA counterclaim in the arbitration after Gold filed his motion to dismiss, is not a "positive assurance" that Gold's misrepresentation claims are not arbitrable.  As noted above, the breach of the NDA cause of action falls within the two limited exceptions to the arbitration clause.  Gold's misrepresentation claims do not for the reasons stated above.  Gold's argument that he would be prejudiced if he was unable to bring his misrepresentation claims in this action because it would "depriv[e] him of a complete defense" is equally unavailing.  (ECF No. 21, p. 7.)  Gold's claims are within the scope of the arbitration clause and permitting Gold to pursue them in Federal Court when he deliberately failed to raise them at arbitration would violate the arbitration clause in the Employment Agreement.

### B.      Res Judicata Bars Counts II and III of Gold's Counterclaims

#### 1.      Standard of Law

Res judicata does not only apply to claims that were actually made, but to claims that could have been made in a prior proceeding. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  To show that a claim is precluded under the doctrine of res judicata, "a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or ***could have been***, raised in the prior action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (Emphasis added).  "Whether a claim that was not raised in the previous action could have been raised therein depends in part on whether the same transaction or connected series of transactions is at issue, and whether the same evidence is needed to support both claims." *Id.* (citations, modifications, and internal quotation marks omitted.)  Res judicata applies to bar claims in Federal Court that were previously arbitrated.  *Id.*

#### 2.      The Elements of Res Judicata are Satisfied

The first two elements of res judicata are easily satisfied.  First, Gold was represented by counsel in the arbitration, had an opportunity to present documentary and testimonial evidence, argue his position to his satisfaction and which culminated in the Arbitration Decision on the merits.  The second element is easily met as the Gold arbitration involved identical parties.

With respect to the third element, "[t]o ascertain whether two actions spring from the same 'transaction' or 'claim,' we look to whether the underlying facts are 'related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Pike*, *supra* at 91. "As this 'same transaction' test indicates, the 'could have been' language of the third requirement is something of a misnomer.  The question is not whether the applicable procedural

8

rules permitted assertion of the claim in the first proceeding; rather, the question is whether the claim was sufficiently related to the claims that were asserted in the first proceeding that it should have been asserted in that proceeding." *Id.*  Gold's Second (Fraudulent Inducement) and Third (Negligent Inducement) Counterclaims are intertwined with the claims he asserted in the Arbitration and rely entirely on evidence already elicited in those proceedings.

### 3.   Gold's Claims Could Have Been Easily Tried in Arbitration

As discussed above, the arbitration clause in the Employment Agreement is unequivocal. Gold could have easily tried his claims in the AAA arbitration because the issues were fully discovered and raised there.  Gold chose to pursue his fraudulent inducement claims in Court to avoid presenting alternative theories at arbitration that might undercut his recovery.

During the arbitration hearing, Gold dedicated much of his direct testimony and many of his exhibits to the alleged misrepresentations made to him during the hiring process.[2]  From the inception of the arbitration with his Statement of Claims, Gold raised allegations and factual issues that were nearly identical to those found in the Counterclaims, alleging, *inter alia*, that he agreed to join Opera Solutions based on the fiscal projections presented by Gupta and others at Opera Solutions.  During the discovery phase of the arbitration, Gold propounded interrogatories and requests for production to Opera Solutions and Third Party investors that directly address the representations made to Gold during the hiring process.  It was clear from the Plaintiff's own testimony and exhibits submitted that Plaintiff actually tried this factual issue at the arbitration. The only thing he did not do was frame the legal issue in a count of his statement of claim to the arbitration, in an attempt to get a "second bite at the apple" in this case.

---

[2] While the arbitrator's decision has been issued and filed in connection with a companion matter, Opera Solutions is prevented from describing the Gold Arbitration in greater detail because the arbitration is confidential. Should this Court determine a copy of those pleadings are necessary to rule on this motion, Opera Solutions is willing to file the AAA arbitration pleadings under seal with this Court.

Gold's claim that he was fraudulently induced to enter into the NDA fits squarely into the allegations and evidence advanced at the arbitration, making them a convenient trial unit.  His failure to assert these claims in the arbitration forecloses his ability to press them here.

## IV.     CONCLUSION

Gold's Counterclaims were arbitrable under his Employment Agreement and are identical to the claims he asserted in the Arbitration.  Gold could have asserted them there but did not. For these and all of the foregoing reasons, Opera Solutions and Gupta respectfully request that this Court dismiss Gold's counterclaim against Opera Solutions and Gold's third-party complaint against Gupta.

Dated: Hartford, Connecticut
          October 24, 2016

Respectfully submitted,
MCCARTER & ENGLISH, LLP

By:    */s/ Eric W. Wiechmann*
          Eric W. Wiechmann (EW4857)
          ewiechmann@mccarter.com
          Tiffany R. Hubbard (TH1975)
          thubbard@mccarter.com
          McCarter & English, LLP
          185 Asylum St., CityPlace I
          Hartford, CT 06103
          Tel: 860-275-6700

          *Attorneys for Plaintiff,*
          *Opera Solutions, LLC and Third-Party*
          *Defendant, Arnab Gupta*

ME1 23573072v.2

**<u>CERTIFICATION OF SERVICE</u>**

This is to certify that a copy of the foregoing was filed electronically this 24th day of

October, 2016.  Notice of this filing will be sent by e-mail to all parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>*Eric W. Wiechmann*</u>
Eric W. Wiechmann (EW4857)

ME1 23573072v.2